561 P.2d 322

**ARIZONA DEPARTMENT OF AERONAUTICS, a department of the State of Arizona, James Vercellino, Director, Thomas H. Childers, Ruth Reinhold, Darwin Grant, Robert J. MacMullin, Al Crawford, Jr., Robert J. Brooks and John S. Houston, as members of the Aeronautics Board, Appellants,**

v.

**FRED HARVEY TRANSPORTATION COMPANY, and Arizona Corporation, Appellee.**

**No. 1 CA–CIV 2923.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 11, 1977.

Rehearing Denied Feb. 24, 1977.

Review Denied March 15, 1977.

---

**402**

Bruce E. Babbitt, Atty. Gen., by James Michael Low, Asst. Atty. Gen., Phoenix, for appellants.

Fennemore, Craig, von Ammon & Udall, P.C., by Stephen M. Savage, Kent A. Blake, Phoenix, for appellee.

OPINION

JACOBSON, Judge.

The only issue which needs to be reached in this appeal is whether a "fee" proposed to be charged to a commercial user of the Grand Canyon Airport by the Arizona Department of Aeronautics[1] falls within the confines of the Arizona Administrative Procedure Act.

Appellee, Fred Harvey Transportation Company (FHT) brought an action against the appellant, Arizona Department of Aero-

nautics, its Director and the members of its board (Department) seeking injunctive relief and a declaratory judgment. As the result of cross-motions for summary judgment, on an agreed statement of facts, the trial court granted judgment for FHT, enjoining the Department from instituting any action against FHT for fees allegedly due or from preventing FHT from gaining access to the Grand Canyon Airport.

The facts, insofar as they are pertinent to the issue we deem controlling, are as follows. The Department has administrative control of all the facilities, including the access road to and the parking lot at the Grand Canyon Airport located in northern Arizona. FHT is a common carrier, holding a certificate of convenience and necessity from the Arizona Corporation Commission to transport passengers and luggage to and from the Grand Canyon Airport. In April, 1970, the Department notified FHT that it would be charged for its use of the access road to the airport and the parking area designated for bus use. The proposed charge was ten percent of the gross revenue derived by FHT from transporting passengers from the airport. This proposal was rejected by FHT and negotiations between FHT and the Department ensued, which were unfruitful. Following the breakdown of negotiations, FHT instituted this action which resulted in the Department being enjoined from imposing the proposed charge. The Department has appealed.

■ It is admitted that the proposed charge was not promulgated by the Department in accordance with the Administrative Procedure Act, A.R.S. §§ 41–1001, et seq. One of the bases of the trial court's granting injunctive relief was that the proposed charge fell within the provision of the Act and the failure of the Department to comply with the Act's provisions invalidated the attempted charge.

The Administrative Procedure Act has, as one of its objectives, the uniform regulation

1. Subsequent to the initiation of this litigation, legislation was enacted reorganizing the Arizona Department of Aeronautics into the Department of Transportation, Aeronautics Division.

This opinion shall refer to this state agency as it existed in the trial court. *See* A.R.S. § 28–104, as amended Laws 1974.

of the manner in which administrative agencies of the state may exercise their rule making powers so as to carry out those functions lawfully delegated to them by the legislature. To this end, the Act requires an administrative agency, when enacting a rule, to give notice and hold hearings (A.R.S. § 41–1002), obtain approval of the attorney general (A.R.S. § 41–1002.01) and file the rule with the secretary of state (A.R.S. § 41–1004).

In the Department's briefs before the court, it first argues that the "fee" sought to be imposed here does not fall within the statutory definition of a "rule" so as to be subject to the provision of the Act. A.R.S. § 41–1001(7) provides:

" 'Rule' means each agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, or declaratory rulings issued pursuant to § 41–1007 or interagency memoranda."

The Department argues that the charge sought to be imposed falls within the exception language concerning "the internal management of any agency and not affecting private rights or procedures available to the public . . . ." In this regard, it urges that since the revenue generated by the charge will only be used for the maintenance of the Grand Canyon Airport, this is an "internal management" affair. It then argues that since FHT does not have a "private right" to the commercial use of public property, the charge cannot affect any "private rights" they may hold.

We disagree. While it is true that the funds generated by the proposed charge shall only be used "internally", that is, within the Department, the source of these funds—to the tune of ten percent of gross revenue—is going to be generated "externally" from FHT. Also, there is no doubt

that "private rights" are going to be affected, that is, funds are going to be taken from FHT and its private right to use these funds in some other manner is going to be affected. We therefore hold that the charge sought to be imposed by the Department falls within the definition of a "rule" supplied by the Administrative Procedure Act.

This does not end our inquiry, however, for A.R.S. § 41–1004(B) provides:

"Nothing in this article shall be construed to require filing with the secretary of state any *rule which establishes or fixes rates, prices or tariffs,* or relates to the use of public works, including streets and highways under the jurisdiction of any state agency when the effect of the order is indicated to the public by means of signs or signals." (Emphasis added.)

█ FHT first contends that this section only exempts the requirement of filing with the secretary of state of a rule which establishes a "rate, price, or tariff." It then argues that the requirements as to notice and hearing and approval by the attorney general are still applicable and since the Department did not fulfill these requirements, the Act has not been complied with and the proposed charge is invalid.

While this provision is subject to that interpretation, reading the Act as a whole, we do not believe that interpretation is correct. The Act is clear that certain steps involving the promulgation of an agency rule must be taken before that rule has validity. Thus, A.R.S. § 41–1007 specifically provides that "in addition to any other ground which may exist, the rule may be declared invalid for a substantial failure to comply with the provisions of this article . . . ." The culmination of the promulgation process is the filing of the rule with the secretary of state. This final step merely has the effect of providing a depository where the interested public may ascertain the latest and officially recognized rule of the administrative agency involved. It appears inconsistent to require the agency to comply with all other promulgation procedures if the rule is not to be listed in

the official depository where the public can find it. A more logical interpretation of the exception language of A.R.S. § 41–1004(B) involving rules establishing "rates, prices or tariffs" is that exemption from filing with the secretary of state likewise exempts the agency from following the other procedural steps culminating in that filing.

We therefore reject FHT's contention that merely exemption from filing can result in the invalidity of the rule.

This brings us to FHT's basic contentions as to the effect of A.R.S. § 41–1004(B). FHT contends that the exemption provided by the "rates, prices, or tariffs" language only applies to changes in dollar amounts of existing rates or fees [2] and does not exempt basic policy decisions as to whether a fee or charge is to be instituted in the first instance. On the other hand, the Department contends that the statute provides a blanket exemption from the Act of any rate, price or tariff fixing activities of an administrative agency.

In reaching these contentions, it is necessary for the court to attempt to determine the reasons underlying the legislative exemption of the establishment of "rates, prices or tariffs" from the procedures of the Act. In this regard, it can be stated without fear of serious contradiction that the power to "establish or fix rates, prices or tariffs" is, in the broadest sense of these terms, one of the most devastating powers on the rights of the public that an administrative agency can wield and thus logically should be subject to at least the minimum safeguards provided by the Act.

Unfortunately, the Model State Administrative Procedure Act, from which the Arizona Act is derived, does not contain similar exemption language, nor is there a similar provision in the Federal Administrative Procedure Act (5 U.S.C. § 551, *et seq.*), and

thus we are unable to glean guidance from these sources.

However, several states have enacted exemption provisions similar to the Arizona Act.[3] Of these states, only California has decisional case law on the subject and only Virginia's reviser's notes give any insight into the reasoning underlying the exemption language. Both of these sources are informative.

The Virginia statute, as amended in 1975, provides: "[a]gency orders or regulations fixing rates or prices are excluded from the operation of the provisions of this article [Administrative Procedure Act] . . . ." The reviser's notes to this amendment state:

"Rate making, though legislative in nature, is excluded from the requirements of Article 2 [Administrative Procedure Act] because due process rulings, statutory requirements, and long standing agency practices have so fully occupied this historically much litigated field that the interposition of a further general process statute seems to be entirely unnecessary at least for the present. Price fixing is also excluded because it is of the same nature."

At least in Virginia, the reasons for exempting rates and price fixing is that these important administrative functions are either covered by other statutory provisions imposing due process requirements or agency practices provide comparable safeguards in these areas.

California, while not consistently, has applied similar reasoning to its exempting the establishment of "rates, prices or tariffs" from its Administrative Procedure Act. Thus, in *California Ass'n. of Nursing Homes, etc., Inc. v. Williams,* 4 Cal.App.3d 800, 85 Cal.Rptr. 735 (1970), in answering the contention that nursing home rates established under the Medi-Cal program were exempt from the Administrative Procedure

---

**2.** FHT does not argue that the charge proposed to be levied by the Department does not fall within the general definition of "rate, prices or tariffs."

**3.** *See* Alaska Stat. § 44.62.040 (Supp.1975); Cal. Gov't. Code § 11380 (West); Mich.Comp. Laws § 3.560(107) [M.C.L.A. § 24.207]; N.C. Gen.Stat. § 150A–10 (Supp.1975); Va. Code § 9–6.14:6.

Act as a regulation fixing "rates, prices or tariffs" stated:

"The contention amounts to a claim that the Medi-Cal agency may adopt rate regulations with no prior notice or hearing. It is at odds with past administrative practices of the Medi-Cal agency, which has habitually filed its regulations with the Secretary of State. These practices are consistent with the law; the claim of exemption is not.

"Usually, when a state law directs an agency to promulgate rates or tariffs binding on the public, the same law fixes its own procedure for hearings upon notice to the public." *Id.* at 821, 85 Cal. Rptr. at 736.

California, it appears, has limited its "rates, prices or tariffs" exemption to its Administrative Procedure Act to those situations where the "rate, price or tariff" established is in accordance with procedural safeguards similar to those imposed by the Act either by statute or administrative practice. While other California cases seem to make inroads on this interpretation, in actuality, the exemption was allowed only where existing due process safeguards were present. *State Compensation Insurance Fund v. McConnell,* 46 Cal.2d 330, 294 P.2d 440 (1956) (allowing Workmen's Compensation rates to fall within the exemption where they were "promulgated reasonably and in conformity with long-established practice"); *In re Setzer's Guardianship,* 192 Cal.App.2d 634, 13 Cal.Rptr. 683 (1961) (allowing rates set by Director of Department of Mental Hygiene for incompetent care to fall within the exemption based on a long legislative history as set forth in *Estate of Perl,* 110 Cal.App.2d 8, 242 P.2d 101 (1952)). *Hubbs v. California Dept. of Public Works,*

36 Cal.App.3d 1005, 112 Cal.Rptr. 172 (1974), cited by the Department is not applicable as it dealt with another provision of the California statute exempting non-quasi legislative powers.

■ In our opinion, the reasoning of the Virginia reviser and the California experience is persuasive. We therefore hold that the exception in A.R.S. § 41–1004(B) of the establishment or fixing of "rates, prices or tariffs" from the provisions of the Administrative Procedure Act, applies only to those "rates, prices or tariffs" established by administrative agencies in accordance with other statutory provisions or past administrative practices which embrace the notice and hearing procedures similar in nature to those provided by the Administrative Procedure Act.

The legislative grant of power under which the Department attempted to make the charge against FHT in this case provided:

"D. The [aeronautics] board may:

\* \* \* \* \* \*

"5. Accept and receipt federal and other monies, either public or private . . . for any . . . purpose authorized pursuant to the provisions of this section." A.R.S. § 2–123.

Neither this statute nor its successor[4] provides for procedural safeguards in the establishment of charges for the use of airport facilities. Since no corresponding statutory system is provided and since the record does not disclose any administrative policy embracing the notice and hearing requirements of the Administrative Procedure Act, we hold the exemption of A.R.S. § 41–1004(B) does not apply to the charge sought to be imposed here.[5] Having previ-

---

4. A.R.S. § 2–123 has now been superseded by A.R.S. § 28–1707, enacted in 1975, which provides in part:

"The director may adopt rules and regulations and establish fees and charges for use of state-owned airports and appurtenant facilities including, but not limited to, the following:

\* \* \* \* \* \*

"11. Ground transportation use of airport facilities in serving passengers arriving or departing."

5. Since the charges sought to be imposed here had not previously been in existence, we do not reach the issue of whether an increase in "rates, prices or tariffs" previously established in accordance with the Act would require additional notice and hearings.

ously held that the charge involved here is a rule within the definition of the Administrative Procedure Act, the failure to comply with that act invalidates the charge. A.R.S. § 41–1007.

Since we can uphold the trial court's judgment on this ground alone, we need not discuss the other grounds relied upon by the trial court in reaching its decision.

The judgment of the trial court is affirmed.

SCHROEDER, P. J., and WREN, J., concur.